**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ANGELA SAMPLE and DAYNE SAMPLE,

     Plaintiffs,

v.                            No. 1:23-cv-865-SMD-KRS

ASHFORD TRS SANTA FE, LLC, d/b/a
HILTON SANTA FE HISTORIC PLAZA,

     Defendant.

**OPINION AND ORDER ON VARIOUS
PRO SE MOTIONS RELATED TO DISCOVERY, AND
<u>NOTICE TO PRO SE LITIGANTS REGARDING DUPLICATIVE MOTIONS</u>**

This is a suit by Plaintiffs Angela Sample ("Angela") and her husband, Dwayne Sample ("Dwayne")[1] (collectively "the Samples" or "Plaintiffs"), for violation of the Americans With Disabilities Act ("ADA"),[2] and for mental anguish caused by Defendant Ashford TRS Santa Fe, LLC, d/b/a Defendant Hilton Santa Fe Historic Plaza ("Ashford TRS" or "the Hotel" or "Defendant"), when Angela's service dog was removed from the Samples' hotel room and the Samples were later asked to leave the Hotel. Defendant denies it violated the Samples' rights or caused their damages; alleges that the dog was removed from the Samples' room while the Samples were away because of noise complaints from other hotel guests concerning the dog barking; and contends that the Samples were told to leave the Hotel only after they threatened

---

[1] The incident at issue in this case occurred before Plaintiffs got married, when Angela Sample went by a different last name. *See* (Doc. 145 at 24). But since Plaintiffs now have the same last name, the Court will use first names when referring to each Plaintiff individually. The Court does so for clarity and convenience only, and does not intend any disrespect.

[2] *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.").

Hotel employees with physical violence. Currently before the Court are numerous motions filed by the pro se Plaintiffs related to discovery issues. As will be seen, Plaintiffs' discovery-related motions collectively raise a number of issues, including (1) whether the Court should extend the discovery deadline, which expired on September 5, 2025,[3] and/or compel Defendant to respond to discovery requests served by Plaintiffs after the discovery deadline expired; (2) whether Plaintiffs are entitled to relief based on a need for reasonable accommodations due to their asserted disabilities; and (3) whether Plaintiffs are entitled to relief related to the manner in which their August 18, 2025 depositions were conducted.[4]

### *Background*

The Amended Complaint alleges that Angela is disabled as a result of "severe asthma with a reactive airway and/or bronchospasms, and anxiety." (Doc. 9 ¶ 12). Angela allegedly uses a service dog to "provid[e] her with physical support, help[ ] to detect and prevent complications that may arise from current medical conditions, pick[ ] up and retriev[e] her medications, and warn[ ] her of oncoming seizures." (*Id*. ¶ 13). On or about November 26, 2022, the Samples checked into the Hotel with Angela's service dog, Honey. Plaintiffs told the Hotel that Honey was a service animal and therefore they were not charged a pet fee for their hotel stay. (*Id*. ¶ 24). After checking in, the Samples went to run errands, leaving Honey in the hotel room. (*Id*. ¶¶ 25-26). When they returned approximately thirty to forty-five minutes later, the Samples found that Honey

---

[3] Plaintiffs have at times inaccurately stated that discovery was extended past the September 5, 2025 deadline in the Court's most recent Scheduling Order (Doc. 48). The Court never granted an extension of that deadline. The Court has always been clear in its subsequent oral rulings and written orders that December 23, 2025 was not a new deadline for discovery in general but rather an extended deadline for the sole purpose of conducting the depositions of three Hotel employees, which the parties had jointly agreed amongst themselves could be taken after the discovery deadline had expired.

[4] The Court intends to issue separate orders in the near future addressing the pending motions to strike filed by Defendant, as well as the pending motions filed by both sides related to the manner in which the depositions of the three Hotel employees will be conducted.

was not in the room. They immediately went to the Hotel front desk and were told that Hotel staff had taken Honey out of their room because Honey would not stop barking. (*Id.* ¶ 29). The Samples allege that the Hotel staff initially told them that Honey would not be returned to them until the manager on duty arrived. (*Id.* ¶ 30). But another hotel employee intervened, and Honey was brought out from a room behind the front desk and returned to the Samples. (*Id.* ¶¶ 34-35). At that point, the Samples allege they "began to exit the hotel through the front doors" when they were "confronted" by Peter Messerer,[5] who the Samples believed to be the manager-on-duty but was later identified by a customer service representative on Hilton Honors Guest Assistance telephone line[6] as the "night auditor[ ]." The Samples allege that Mr. Messerer yelled at them, "Now that you got your service dog, get the fuck off my property!" (*Id.* ¶¶ 36, 39, 41). The Samples "proceeded to their hotel room to pack their belongings and then exited the property." (*Id.* ¶ 38). The Hilton customer service representative told the Samples that they were being kicked out of the hotel because the "night auditor" had reported that Dwayne had threatened the front desk staff. (*Id.* ¶ 44). The Samples deny that allegation, and "surmise that [the Hotel] intentionally fabricated" the threat allegations "as a further justification for throwing Plaintiffs out of the hotel." (*Id.* ¶ 45). The Samples found a different hotel to stay at, and Ashford TRS ultimately gave them a refund for their room at the Hotel. (*Id.* ¶ 51).

The Amended Complaint alleges that the Samples "suffered stress and anxiety due to being denied their dog, as well as being denied the hotel services they had contracted for"; that they "suffered emotional distress, mental anguish, humiliation, and embarrassment as a result of" the

---

[5] There are multiple versions in the record of how to spell Mr. Messerer's last name. The Court uses the version shown in Defendant's time logs.

[6] The Hilton Honors Guest Assistance line apparently is a service provided by Hilton Worldwide Holdings, Inc., a separate corporate entity from Ashford TRS.

Hotel's actions; that the Hotel "specifically withheld" Honey from Angela "for a period of approximately 15 to 20 minutes, during a highly stressful and emotional situation in which [she] could easily have suffered from a medical emergency, during which she would have required the use of the very service dog [the Hotel] was then withholding from her"; and that Angela was "denied the use of" the Hotel, a place of public accommodations, on the basis of [her] service dog. (*Id.* ¶¶ 53-56). In Counts I-IV of the Amended Complaint, Plaintiffs allege claims for violation of the ADA, breach of contract, "bad faith," and negligence. Dwayne's disability-related claims against the Hotel are based on his "association" with Angela.[7]

### *Procedural History*

For reasons that should become apparent once the Court begins to discuss the various pro se motions at issue in this opinion, the Court will provide a detailed, and hence lengthy, recitation of the procedural history of this case.

### (i)    Fall of 2023 through Summer of 2024

The original complaint was filed on October 3, 2023. At that time, the Samples were represented by Attorney Kristi Kneedler of the Lento Law Group, P.C. and Attorney Karlos Ulibarri of Ulibarri Law Office. The original complaint named the defendant as "Hilton Worldwide Holdings, Inc., d/b/a/ Hilton Santa Fe Historic Plaza, 100 Sandoval Street Santa Fe, New Mexico 87501." (Doc. 1). But on November 1, 2023, counsel for Hilton Worldwide Holdings, Inc. (Donna Chapman of Chapman Law, P.C.[8]) filed a notice stating that Hilton Worldwide Holdings had been granted an extension of time to file a responsive pleading "so Plaintiffs can

---

[7] *See* 42 U.S.C.A. § 12182(b)(1)(E) ("It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.").

[8] Ms. Chapman later filed a Notice of Change in Law Firm affiliation indicating that she is now associated with the law firm Quintairos, Prieto, Wood, & Boyer, P.A. (Doc. 58).

identify and serve the proper party in this case." (Doc. 8). On November 6, 2023, Attorneys Kneedler and Ulibarri filed an amended complaint on the Samples' behalf naming the defendant as "Ashford TRS Santa Fe, LLC, d/b/a/ Hilton Santa Fe Historic Plaza, 100 Sandoval Street Santa Fe, New Mexico 87501." (Doc. 9). Counsel for Ashford TRS (the same attorney who had appeared on behalf of Hilton Worldwide Holdings) filed a notice accepting service of the amended complaint on November 10, 2023 (Doc. 10), and Ashford TRS filed an answer to the amended complaint on December 29, 2023 (Doc. 12).

The parties held a Rule 26(f) planning meeting on January 12, 2024 (attended by Kristi Kneedler of the Lento Law Group for Plaintiffs, and Jaclyn Page of Chapman Law for Defendant), and they filed a Joint Status Report and Provisional Discovery Plan ("JSR") on January 19, 2024 (Doc. 14). The JSR stated that discovery would be needed regarding the actual events that took place during Plaintiffs' stay at the Hotel, the employees involved, the health consequences for Plaintiffs, and Plaintiffs' damages. Ashford TRS filed certificates of service indicating that it had served Plaintiffs' counsel with Initial Disclosures and Supplemental Initial Disclosures on January 26 and 29, 2024 (Docs. 16, 17). The docket does not indicate when Plaintiffs served their Initial Disclosures. *See* D.N.M.LR-Civ. 26.2 (requiring filing of a certificate of service).

A Rule 16 scheduling conference was held on January 30, 2024, attended by Attorney Kneedler for Plaintiffs and Attorney Page for Defendant (Doc. 18), after which the Court entered a Scheduling Order (Doc. 20) providing, among other things, that discovery would terminate eleven months later on January 2, 2025. There is no indication on the docket over the next six months that written discovery had been pursued by either side. In fact, the only activity on the docket in that time-period consists of the submission by Attorney Ulibarri in May 2024 of an appearance on Plaintiffs' behalf for Attorney Joseph Cannizzo of the Lento Law Group, which

was followed in July 2024 by a motion by Attorney Cannizzo to withdraw his appearance because he had resigned from the Lento Law Group. Attorney Cannizzo's motion to withdraw noted that Attorney Kneedler also was no longer employed by the Lento Law Group, although she had never filed a motion to withdraw. (Doc. 26). The motion stated that Attorney Cannizzo could not obtain the Samples' consent for his withdrawal because he no longer had access to their contact information. Shortly thereafter, Attorney Ulibarri filed an appearance for Plaintiffs on behalf of Attorney Samuel Jackson, another member of the Lento Law Group. (Doc. 29). Thereafter, on August 1, 2024, Ashford TRS filed a certificate of service for its expert witness disclosure, to which it attached an expert report opining that Defendant did not violate any rules, statutes, or standards of care during the incident at the Hotel involving Angela's service dog, Honey. *See* (Doc. 31-3 at 1-9). Around the same time, Ashford TRS also served written discovery on Plaintiffs through their counsel of record, Attorneys Ulibarri and Kneedler. (Doc. 32). A week later, Attorney Kneedler filed a motion to withdraw, leaving Attorneys Ulibarri and Jackson as Plaintiffs' representatives in the case. A status conference was held on August 14, 2024, at which Attorney Jackson appeared on Plaintiffs' behalf and stated that he needed an extension of the discovery deadline, to which Defendant's counsel, Attorney Page, did not object. (Doc. 34).

(ii)     **Fall of 2024 through Spring of 2025**

A motion to extend deadlines was filed on September 9, 2024, and granted on September 13, 2024. Relevant deadlines that were extended included Plaintiffs' deadline to amend the pleadings or join additional parties (extended to December 3, 2024); Plaintiffs' expert reports (extended to January 1, 2025); discovery (extended to July 2, 2025); and dispositive motions (extended to August 3, 2025). (Doc. 37). The extension of discovery deadlines was followed, on October 4, 2024, by Defendant's filing of a motion to compel, which stated that Plaintiffs had not

provided any responses to Defendant's August 7, 2024 written discovery requests, and also had not responded to correspondence sent on September 11, 2024 and September 19, 2024 asking about the missing discovery responses. (Doc. 39). No response was ever filed by Plaintiffs to the motion to compel, causing the Court to grant the motion and award fees and costs on November 1, 2024. (Doc. 41).

From the time Plaintiffs filed their unopposed motion to extend deadlines on September 9, 2024 through the beginning of January 2025, there had been no indication on the docket that Plaintiffs were prosecuting this litigation. In fact, by their failure to respond in any manner to Defendant's written discovery requests, inquiries concerning the same, and motion to compel, it appeared that they were not. Accordingly, the Court set a telephonic hearing for February 5, 2025 to determine the status of the case. (Doc. 42). One day prior to the hearing, Attorney Ulibarri filed an appearance on behalf of Attorney John Fisher of the Lento Law Group. (Doc. 45). Attorney Fisher appeared at the February 5 hearing and acknowledged that there had been delay in Plaintiffs' prosecution of the case due to a number of changes in counsel. Defendant's counsel expressed a need to extend discovery deadlines, and the Court directed counsel that if they could agree on new deadlines they should file a proposed stipulated scheduling order for the Court to enter. (Doc. 47). The parties did file a stipulated scheduling order, which the Court entered on February 7, 2025. (Doc. 48). The deadline for filing amended pleadings or joining additional parties had already expired when the stipulated order was submitted to the Court, and the parties did not suggest that it be extended. The deadline for Plaintiffs' expert reports also had already expired, but the parties requested an extension for that deadline. The amended scheduling order found excusable neglect due to changes in Plaintiffs' counsel, and extended the deadline for Plaintiffs' expert reports to April 1, 2025. (*Id.*). The deadline for Defendant's expert reports was extended to May 1, 2025.

Discovery was extended to September 5, 2025; the deadline for motions related to discovery was extended to September 26, 2025; and the deadline for all other motions was extended to October 17, 2025. (*Id.*). Barely a month later, Attorney Ulibarri filed an appearance on behalf Attorney Soleiman Raie of the Lento Law Group (Doc. 49), and a little over a month after that, Attorney Jackson filed a notice withdrawing his appearance (Doc. 52). Two and a half months later, there was still no indication from the docket that Plaintiffs were taking any steps to pursue the litigation other than by substituting new attorneys from the Lento Law Group. Therefore, on May 29, 2025, the Court scheduled another telephone hearing for July 9, 2025. (Doc. 53).

> **(iii)** <u>**Summer of 2025**</u>

Continuing the revolving door of attorneys, on June 10-11, 2025, Attorney Ulibarri filed notices that Attorney Dolores Bojazi and Attorney Harry Cooper, both of the Lento Law Group, would be appearing on behalf of Plaintiffs. (Docs. 55, 57).[9] But no attorney appeared on behalf of Plaintiffs at the start of the July 9, 2025 hearing. Speaking to defense counsel, the Court observed that, from its review of the docket, Plaintiffs appeared not to have been actively pursuing the case, to which defense counsel responded that she had spoken with Attorney Bojazi by telephone approximately three weeks earlier and been advised that all of the previous attorneys from the Lento Law Group who had appeared on Plaintiffs' behalf at one time or another had left the firm, and that Attorney Bojazi had inherited a case load of forty or more new files. (Doc. 59). Meanwhile, the Court's law clerk was able to reach Attorney Ulibarri by telephone, who then contacted Attorney Bojazi, who eventually joined the telephone conference late, stating she was unaware that the hearing had been scheduled. (*Id.*). The Court observed that the September 5

---

[9] While Attorney Ulibarri's filing of notices of appearances for the Lento Law Group attorneys satisfied the requirements of D.N.M.LR-CIV. 83.3, the attorneys themselves should have filed entries of appearances, as required by D.N.M.LR-Civ. 83.4(a).

discovery deadline was fast approaching, and further stated that it was unlikely that deadline would be extended given the previous extensions that had been necessary because of Plaintiffs' inaction in the case, which inaction had continued. Attorney Bojazi responded that she understood and that she would be reviewing the file and then reaching out to opposing counsel about how to best move the case forward. In anticipation of discovery having ended in the first week of Septermber and the parties possibly being in a position at that time to select a date to hold a settlement conference, the Court set the next telephone conference for September 18, 2025. (Doc. 60).

Notwithstanding the Court's comments during the July 7, 2025 telephonic hearing concerning additional extensions of discovery deadlines, Ashford TRS filed an unopposed motion to extend deadlines on August 29, 2025, stating that Defendant had only just been able to depose Plaintiffs during the past week and needed additional discovery considering those recent depositions. (Doc. 61). Although the motion was unopposed, the Court declined to immediately grant the requested deadline extensions, instead taking the motion under advisement until the September 18, 2025 telephone conference. (Doc. 62). Two days before the scheduled conference, however, Attorney Bojazi sought a continuance, stating that "ongoing conflicts ha[d] rendered it impossible for [Attorney Bojazi] to continue to effectively represent [her] client," and that her office intended to file a motion to withdraw as counsel for Plaintiffs. *See* (Docs. 63, 65). The Court denied the request to continue, stating that the matters raised by Attorney Bojazi would be taken up during the conference. (Doc. 66).

### (iv)    **Fall of 2025**

Attorneys Bojazi and Ulibarri both appeared at the September 18, 2025 conference, at which time Attorney Ulibarri informed the Court that he also intended to withdraw from the case. (Doc. 67). The Court asked about the other attorneys from the Lento Law Group who had not

withdrawn their appearances, and was informed that those attorneys had already left the Lento Law Group. Turning to Defendant's unopposed motion to extend the deadlines, the Court pointed out that the motion encompassed deadlines that had already expired, such as the expert reports deadlines, and that Plaintiffs had not been prosecuting the case for over two years now. Given the circumstances, the Court expressed concern that there might not be good cause or excusable neglect for further extensions, at which point defense counsel indicated that, in light of recent developments, she would prefer that the Court not take up Defendant's motion at that time. Rather than hold the motion in abeyance, the Court stated it would prefer to just deny the motion without prejudice. (*Id.*). Following the hearing, Attorney Bojazi filed a letter to opposing counsel (filed on the docket as a "Notice") in which she advised that she was vacating the notices for three depositions that had been scheduled to proceed by Zoom on September 28, 2025. (Doc. 71). The depositions were of three Hotel employees—Peter Messerer, Juana Gonzalez, and John Rickey. Attorney Bojazi also filed a motion to withdraw as attorney for Plaintiffs (Doc. 70), and Attorney Ulibarri filed his motion to withdraw a few days later (Doc. 73).

Attorney Bojazi's motion to withdraw was immediately opposed by a joint filing signed by Angela and Dwayne Sample, acting in their pro se capacities. Among other things, the Samples argued that allowing Attorney Bojazi to withdraw would prejudice them because "[d]iscovery remain[ed] outstanding, depositions [were] scheduled, and important deadlines [were] approaching." (Doc. 72). On September 25, 2025, the Court entered an order directing Attorneys Bojazi and Ulibarri to correct deficiencies in their motions to withdraw, and scheduling a hearing on those motions for October 22, 2025. (Doc. 74). On September 29, 2025, Ashford TRS filed a certificate of service for its responses to Plaintiffs' Interrogatories and Requests for Production of Documents, indicating that service had been addressed to Attorney Bojazi. (Doc. 76). In the week

prior to the week of the hearing on the motions to withdraw, the Samples filed a motion titled "Motion to Compel Discovery, Enforce Deposition Deadlines, and Address Unauthorized Substitution of Counsel & Ethical Violations Under Rule 11 Federal Rules of Civil Procedure." (Docs. 77, 79).[10] The motion raised a number of complaints about the conduct of this litigation by the Lento Law Group as well as by the law firm representing Defendant. Insofar as opposing counsel's conduct was concerned, the Samples complained that Defendant "fail[ed] to respond to discovery requests" or "attend [its] own deposition[]";[11] that defense counsel "switched multiple attorneys without motion to substitute and also switched law firms without [filing a] motion [to] prov[e] there [was] no conflict of interest"; and that the conduct of Defendant and its attorneys "demonstrate[d] a pattern of delay, evasion, and procedural noncompliance." Regarding their own attorneys, the Samples complained that the Lento Law Group had switched attorneys throughout the litigation without a motion to substitute counsel; that the various attorneys had missed deadlines; that an attorney unknown to the Samples had been assigned to represent them at their depositions without their consent; and that the Lento Law Group was now seeking to withdraw from the case altogether without taking adequate steps to protect the Samples' interests. The Samples asserted that the Lento Law Group should be required to provide reasonable advance notice before withdrawing to allow the Samples to find replacement counsel; that they should complete previously scheduled depositions before withdrawing; and that they should turn over client papers and property in a timely manner so that the Samples could continue the litigation without prejudice. The Samples requested that the Court order the Lento Law Group and opposing

---

[10] The motion appears on the docket twice, apparently filed once by Attorney Bojazi and then again by the pro se Plaintiffs acting on their own behalf. Attorney Bojazi states in a letter addressed to the Court and filed as a "Notice" that the motion was not prepared by counsel from Lento Law Group, but instead had been drafted by the pro se Plaintiffs and filed by Attorney Bojazi at their request. (Doc. 78).

[11] The Court is unaware of any factual basis in the record for either of these accusations.

counsel's law firm to correct past allegedly improper substitutions of counsel by submitting motions to substitute, and to require them to schedule and complete outstanding depositions. They also sought an order compelling Defendant to respond to discovery without specifying the discovery at issue.

Thereafter, in the days leading up to the hearing on the attorney motions to withdraw, Ashford TRS filed a motion for summary judgment (Doc. 81), and the Samples filed as pro se litigants the following documents: (i) a motion seeking leave to file electronically (Doc. 82); (ii) a document titled "Joint Motion For Leave To Withdraw As Counsel" (Doc. 83), which, although purporting to be "joint," was signed only by the Samples and not Attorney Bojazi;[12] (iii) a response to Ashford TRS's motion for summary judgment (Doc. 84); (iv) a "Motion For Leave To File Amended Complaint To Add Hilton Worldwide Inc." (Doc. 85);[13] and (v) a duplicate version of the motion to amend filed one day later (Doc. 87).

The hearing on October 22, 2025 was attended by the Samples, Attorneys Bojazi and Ulibarri, and Attorney Chapman for Ashford TRS. *See* (Doc. 89). At that time, the Court addressed the issues that had been raised in the Samples' "Motion to Compel Discovery, Enforce Deposition Deadlines, and Address Unauthorized Substitution of Counsel & Ethical Violations Under Rule 11 Federal Rules of Civil Procedure" (Docs. 77, 79). But first the Samples were allowed to speak

---

[12] Rather than a "joint motion," the filing clearly set forth a proposal by the Samples for the conditions under which they would agree to an order permitting Attorney Bojazi to withdraw from the case. Attorney Bojazi stated as much in a letter to the Court (which was filed as a "Report by Angela Sample [and] Dwayne Sample"), indicating that the Samples "prepared and requested" that Attorney Bojazi file a "Joint Motion to Withdrawal as Counsel to which [she] d[id] not consent." (Doc. 86).

[13] Approximately one month earlier, on September 16, 2025, the Samples had filed a pro se complaint in state court against the Hotel and Hilton Worldwide Holdings Inc. based on the same facts as here, which the defendants removed to federal court on October 8, 2025. *See Sample v. Hilton Worldwide Holdings, Inc.*, 1:25-cv-984-WJ-SCY. Plaintiffs voluntarily dismissed the case on January 15, 2026, after Judge Yarbrough issued an order to show cause why the complaint should not be dismissed as duplicative of the present case. *See id.,* Dkt. ## 68, 69.

on their own behalf, reiterating their concerns and dissatisfaction with the Lento Law Group. Angela Sample also stated that she had no objection to Attorney Bojazi withdrawing from the case provided that she first completed the depositions of the three Hotel employees, which Attorney Bojazi had scheduled prior to filing her motion to withdraw. Attorney Bojazi confirmed that she had scheduled the three depositions with opposing counsel, but stated that she did so only to preserve Plaintiffs' ability to take them. She stated that she did not intend to take the depositions herself because of ethical concerns requiring her withdrawal from the case. Dwayne Sample expressed concern over how much it would cost Plaintiffs to conduct the depositions themselves, as well as problems Plaintiffs were having getting the discovery they had requested, such as documents that supposedly were missing from Defendant's document production. The Court explained to Plaintiffs that it was their responsibility to pay for any discovery they chose to conduct, including depositions of witnesses, and also pointed out that it was not Defendant's responsibility to fix the apparent lack of diligence of Plaintiffs' counsel. The Court stated that this litigation was not the appropriate forum in which the Samples could seek redress for their attorneys' inadequate representation, and that, insofar as any alleged failure by Defendant to provide discovery was concerned, the Court could not grant any relief because of the Samples' lack of specificity regarding the supposedly missing discovery. (Docs. 89, 94).

With regard to the issue of additional discovery, the Court questioned Attorney Chapman whether she had agreed to allow Plaintiffs to take the depositions of the three Hotel employees outside the discovery period, which had expired on September 5, 2025. Attorney Chapman confirmed that she had reached an agreement with Attorney Bojazi to conduct the three Hotel employees' depositions on October 24, 2025. The Court asked Attorney Chapman whether she had any objection to the Court granting the motion to withdraw as counsel and permitting the

Samples to take the three depositions at a later date, either pro se or through newly retained counsel. Attorney Chapman discussed the need for firm deadlines, arguing that her client had been prejudiced by the neglectful manner in which the Lento Law Group had been conducting the litigation up until that point. The Court explained that it was only permitting the three depositions because Attorney Chapman had acknowledged that she had already agreed to allowing them to be conducted after the discovery deadline had expired. The Court stated that it would give the Samples a total of sixty days to retain new counsel *and* complete the three depositions, or else proceed pro se and complete the three depositions.

Following the October 22, 2025 hearing, the Court entered orders granting the attorney motions to withdraw without imposing any conditions on the withdrawing counsel to conduct further discovery on Plaintiffs' behalf, but ordering Attorney Bojazi to transmit to Plaintiffs without delay all files, records, and other client documents in her possession. (Docs. 92, 93, 95, 97). The Court denied Plaintiffs' pro se motion to compel missing discovery for the reasons stated at the hearing, and extended the September 5, 2025 discovery deadline until December 23, 2025 for the sole purpose of conducting the agreed depositions of the three Hotel employees. (Docs. 94, 98).

One day after the hearing, on October 23, 2025, the Samples filed a "Motion to Strike Deposition Testimony and for a Protective Order" (Doc. 90), and a "Motion to Compel Production of Documents" (Doc. 91). The Motion to Strike sought an order "striking" unspecified portions of the Angela's and Dwayne's testimony at their August 18, 2025 depositions on the ground "that opposing counsel … engaged in questioning that was irrelevant, harassing, and conduct[ed] in bad faith." (Doc. 90 at 1). The Motion to Strike also sought a protective order "prohibiting opposing counsel from asking similar questions in the future and awarding sanctions. (*Id.* at 2). The Motion

14

to Compel sought an order compelling Defendant to produce incident reports, safety reports, emails, and text messages concerning the November 26, 2022 incident at issue in the case, which the Samples claimed had been sought by Plaintiffs' document production requests but supposedly not produced by Defendant. One day later, on October 24, 2025, Plaintiffs filed a "Motion Citing Deposition Abuse" (Doc. 99), which asked for a protective order and sanctions for defense counsel's supposedly improper and harassing questioning at Plaintiffs' August depositions.

On October 27, 2025, the Court denied the Motion to Strike and Motion to Compel as untimely because the deadline to file motions relating to discovery had expired on September 26, 2025. *See* (Doc. 102). After reviewing the allegedly abusive deposition questioning set forth in the second motion addressing that topic (Doc. 99), the Court denied that motion as well, finding that Plaintiffs had not shown that the legal requirements for sanctions under either of the cited rules (Fed. R. Civ. P. 30(d)(2) and Fed. R. Civ. P. 37) had been met. *See* (Doc. 103). That same day, Plaintiff filed another "Motion to Compel Discovery." (Doc. 104). This motion to compel stated that, on October 8, 2025, Plaintiffs had served Ashford TRS "*and* Hilton Worldwide, Inc. with requests for Hilton Diamond Customer Service Incident reports from November 26th, 2022 & Investigation Report & Incident Reports from Jody Almendarez Hilton Worldwide Inc[.] Corporate Escalations Department Executive Ambassador." (*Id.* at 1). According to the motion, "Defendants have failed to respond, or responded but refused to produce the [requested] documents[.]" (*Id.* at 2). The motion listed the following documents as having been requested but not produced or only partially produced:

- Time Log Report from November 26, 2022, pages 2, 4, 6, and 8

- Investigation Report dated November 26, 2022 from Jody Almendarez of Hilton Worldwide Inc. Executive Customer Relations

- Hilton Diamond Customer Incident Report dated November 26,

15

2022

(*Id.*).

On October 28, 2025, the Court entered an order denying the motion to compel as untimely. (Doc. 105). The Court's order also cited additional procedural deficiencies with the motion, and noted that the present motion might have been avoided had Plaintiffs complied with Local Rule of Procedure 7.1(a), further explaining that some of the documents sought by the motion were discussed at the October 23, 2025 hearing, and that Defendant's counsel told Plaintiffs at that time that the documents in question were in the possession of Hilton Hotels, a different entity from Defendant and a non-party to this case. The Court stated:

> Plaintiffs were informed at the October 23 hearing that these documents are not in Ashford TRS Santa Fe, LLC's possession, custody or control, yet proceeded with filing a motion to compel Ashford TRS Santa Fe, LLC to produce documents it does not have. The motion to compel lacks merit. What's more, Defendant might have alerted Plaintiffs to the aforementioned defects in the motion had Plaintiffs consulted with defense counsel prior to filing it.

(*Id.* at 3). The only document sought by the motion not in the possession of a third party was the allegedly missing pages from Ashford TRS's time log reports. The Court declined to compel production of the missing pages on procedural grounds, but nevertheless instructed Ashford TRS that if the pages in question were in fact missing from Defendant's prior production, the Court believed that, "as a matter of professional courtesy, Defendant should either provide Plaintiffs with the missing pages or explain to Plaintiffs … why the pages in question are not 'missing' or else cannot be produced." (*Id.* at 4).

16

*Discussion*

**A.    Plaintiffs' Pending Discovery Motions**

**Doc. 107:    "Plaintiffs' [Corrected] Motion For Reconsideration Of Order Denying Plaintiffs' Motion To Compel Discovery"**

The first motion currently before the Court is a motion by the pro se Plaintiffs seeking reconsideration of the Court's October 28, 2025 order (Doc. 105), denying Plaintiff's Motion to Compel Discovery (Doc. 104). *See* (Doc. 107). As grounds for the motion for reconsideration, the Samples argue that denying them the relief sought in the motion constitutes a "manifest injustice" given the withdrawal of their previous counsel, the extension of discovery granted by the Court for purposes of taking the depositions of the three Hotel employees, and Defendant's previously filed motion to extend discovery that had been denied without prejudice. (Doc. 107 at 2).

**1.    *The Motion Is Denied Because Grounds For Amending The Scheduling Order Are Not Present***

Reconsideration of an interlocutory order such as the Court's October 29, 2025 order denying Plaintiffs' October 27, 2025 motion to compel "is a matter of the Court's discretion and warranted when the Court has made an error of fact or of law." *Romero v. Core Civic, Inc.*, No. 1:21-CV-544 KG/KRS, 2022 WL 17360324, at *2 (D.N.M. Dec. 1, 2022) (citing *Todd v. Montoya*, 791 F. Supp. 2d 1060, 1062 (D.N.M. 2011) (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000))). "A motion to reconsider is not an opportunity 'to revisit issues already addressed or advance arguments that could have been raised earlier.'" *Id.* (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)). Rather, courts typically grant such relief only when there is new intervening and controlling law or new evidence not available previously, or when there is a "need to correct clear error or prevent manifest injustice." *Id.* (quoting *Kruskal v. Martinez*, 429 F.Supp.3d 1012, 1026 (D.N.M. 2019) (quoting *Servants of the Paraclete*, 204

17

F.3d at 1012)). Plaintiffs argue that reconsideration is warranted here to correct a manifest injustice.

Initially, the Court notes that although the motion addressed by the Court's October 28, 2025 order was framed as a motion to compel discovery, it sought to compel responses to discovery requests served after the discovery deadline had expired. The proper motion for Plaintiffs to have filed, therefore, would have been a motion seeking an extension of the expired discovery deadline, rather than a motion to compel. *See* D.N.M. LR-Civ.10.2 (Titles of Documents. The title of a document must clearly identify its substance and any filed document to which it responds or is connected."). Plaintiffs' motion to compel was "not [the] appropriate vehicle for" arguments "implicating" an extension of the expired discovery deadline; to obtain that relief, Plaintiffs "would be required to so move and to satisfy the standard applicable to a motion to [amend the scheduling order] at that stage of the proceedings." *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2019 WL 4643681, at *3 (D. Colo. Mar. 12, 2019) (holding that the "instant Motion for Reconsideration is not an appropriate vehicle for" arguments "implicating an amendment to the operative pleading").

But even if the Court were to construe Plaintiffs' original motion to compel (Doc. 104) as a motion to amend the Scheduling Order by extending the already expired discovery deadline, Plaintiffs' current motion for reconsideration does not show that the standard for amending the Scheduling Order has been satisfied. Modification of the Court's scheduling order deadlines requires a showing of good cause and Court approval. *See* FED. R. CIV. P. 16(b)(4); D.N.M. LR-CIV. 16.1; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) ("Discovery and scheduling are matters within the district court's broad discretion."); *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 591 (10th Cir. 2007) (the court has broad discretion to manage the

progression of discovery). And a motion to modify a deadline filed *after* the deadline has expired requires a showing of excusable neglect. *See* FED. R. CIV. P. 6(b)(1)(B). "Good cause comes into play in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant. It requires the moving party to show the deadline cannot be met despite the movant's diligent efforts." *Utah Republican Party v. Herbert*, 678 Fed. Appx. 697, 700 (10th Cir. 2017) (internal quotation marks and citations omitted). The Tenth Circuit "ha[s] said that '[w]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect.'" *Id.* (citation omitted). And according to the Tenth Circuit, excusable neglect takes into account "all relevant circumstances surrounding the party's omission, including the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Johnson v. City of Murray*, No. 2:10-CV-01130-TS-EJF, 2012 WL 5194025, at *2 (D. Utah Oct. 19, 2012) (internal quotation marks omitted) (quoting *Stringfellow v. Brown*, No. 95–7145, 1997 WL 8856, at *1 (10th Cir. Jan.10, 1997) (unpublished) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993))).

Neither the original motion nor the current motion for reconsideration satisfy the good cause or excusable neglect standards. Plaintiffs cite to the fact that the September 5, 2025 discovery deadline expired due to their previous counsel's neglect, arguing that their counsel's previous neglect constitutes good cause to extend the deadline. Plaintiffs do not attempt to argue that their previous counsel's neglect was excusable; nor could they. The Court made very clear at previous status conferences at which former counsel appeared that the past delays in conducting discovery,

19

which the Court had already tolerated for more than a year, would not be tolerated going forward, and counsel was forewarned that no further extensions would be given. Accordingly, the only argument the Samples can make is that they should not be held accountable for their previous counsel's *in*excusable neglect, which was beyond their control. But that argument has been squarely rejected by the United States Supreme Court in *Link v. Wabash RR Co.,* 370 US 626, 633-34 (1962)—the very case that the Samples have cited to the Court for excusing them from their former counsel's prior neglect.

In *Link*, the Supreme Court stated that there was "*no merit* to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.* at 633 (emphasis added). Rather, the Court said, the petitioner had "voluntarily chose[n] this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* Indeed, the Court said, "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* at 634 (quoting *Smith v. Ayer*, 101 U.S. 320, 326). In a footnote accompanying this discussion, the Supreme Court further explained:

> Clients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious. *See, e.g., United States ex rel. Reid v. Richmond*, 2 Cir., 295 F.2d 83, 89-90; *Egan v. Teets*, 9 Cir., 251 F.2d 571, 577 n. 9; *United States v. Sorrentino*, 3 Cir., 175 F.2d 721. Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions

20

of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.

*Id.* at 634 n.10; *see also Gripe v. City of Enid,* 312 F.3d 1184, 1189 (10th Cir. 2002) ("Plaintiff argues against the harshness of penalizing him for his attorney's conduct. But there is nothing novel here. Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney."); *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir. 1986) ("If the lawyer's neglect protected the client from ill consequences, neglect would become all too common."); *Lucero as Next Friend to Lucero v. City of Clovis Police Dep't,* No. 2:19-CV-445-KWR-KRS, 2021 WL 1326937, at *4 (D.N.M. Apr. 9, 2021) ("[l]itigants are routinely held accountable for their counsel's errors or oversights"), *report and recommendation adopted*, No. 2:19-cv-445-KWR-KRS, 2021 WL 2525644 (D.N.M. June 21, 2021).

Plaintiffs' motion for reconsideration also cites to Defendant's previously filed motion to extend discovery deadlines as another reason for re-opening discovery. But the fact that Defendant was previously unopposed to extending discovery is not a reason for the Court to grant Plaintiffs' present request for an extension. Notwithstanding its previous position of agreeing to an extension of discovery, it is clear from the record that Defendant is presently *opposed* to allowing Plaintiffs to conduct additional discovery other than the three depositions to which they already agreed. *See, e.g.,* (Doc. 119 at 21).

Beyond the above, even if Defendant did not oppose an extension of discovery, that would not mean the Court would necessarily grant the agreed-to extension. The Scheduling Order states that "the Court must approve any changes to the timing or scope of discovery, other than the parties' agreement to extend the length of a deposition made during the deposition in question," and that "[r]equests by a party to change the timing or scope of discovery, other than a mutual agreement to extend a deposition reached during the deposition, must be made by motion and

21

before the termination of discovery or the expiration of any applicable deadline." (Doc. 20 at 2). Additionally, although "courts subject joint motions to less scrutiny than opposed motions," that does not mean a court will "rubber stamp unopposed motions." *OptumCare Mgmt., LLC v. Gutierrez-Barela*, No. CV 20-474 RB/SCY, 2023 WL 1787888, at *3 & n.1 (D.N.M. Jan. 25, 2023); *see, e.g., Green Automotive, LP v. ATN Mgmt. Co., LLC,* No. CIV-18-28-R, 2019 WL 3711753, at *3 (W.D. Okla. Jan. 25, 2019) (denying joint motion to amend scheduling order because "[t]he parties wholly ignored their obligations to the Court and expected the Court to ignore their transgressions and extend all of the deadlines"). Indeed, the Court's initial response to Defendant's unopposed motion to extend discovery filed in August 2025 only days before the discovery deadline was due to expire was not to grant it but to defer ruling on it instead. *See* (Doc. 62). The Court deferred ruling on the motion, notwithstanding that it was unopposed and the discovery deadline had not yet expired when it was filed, because the Court was concerned that the parties had not shown good cause for a further extension of discovery given that numerous previous extensions had been granted, the docket showed neglect by counsel in moving the case forward, and the parties had been forewarned at the previous status conference that it was unlikely the Court would grant any further extensions. In short, it is unlikely the Court would have granted Defendant's unopposed motion to extend discovery had Defendant pressed the Court for a ruling on it or refiled the motion at a later date.[14] The Court has a duty under FED. R. CIV. P. 1 to ensure "the just, speedy, and inexpensive determination" of the action. And to comply with that duty the Court likely would have denied Defendant's motion even though it was unopposed. *See, e.g.,*

---

[14] The Court's denial of the motion "without prejudice" only meant that Defendant was not precluded by the Court's denial from refiling the motion; it did not mean that the motion would be granted if it was refiled. Plaintiffs too have not been precluded from filing *a* motion seeking an extension, although that does not mean Plaintiffs may file without penalty multiple, duplicative motion*s* seeking that same relief.

*OptumCare Mgmt., LLC*, 2023 WL 1787888, at \*2 (noting that the court previously denied a motion to extend in part because of "the age of the case and the Civil Justice Reform Act's mandate to implement a delay reduction plan to 'ensure just, speedy, and inexpensive resolution of civil disputes'" (internal quotations omitted)).

Finally, Plaintiffs refer to the fact that, at the October 22, 2025 hearing, the Court extended discovery an additional sixty days, and they assert that this ruling "created confusion as to the status of Plaintiffs' discovery rights." (Doc. 107 at 1). There was nothing confusing, however, about the Court's rulings at the October 22 hearing: the Court clearly stated that it would extend discovery for the limited purpose of allowing Plaintiffs to take three depositions that Defendant had previously agreed with Plaintiffs' former counsel could be conducted after the expiration of discovery. The Court set a deadline of December 23, 2025 for those three depositions to be taken. *See* (Doc. 98). The Court did not re-open discovery generally or extend the discovery deadline. Any suggestion to the contrary in the present or any other motion filed by Plaintiffs is a clear misrepresentation of the record.

**2.**    ***The Motion Is Denied For The Independent, Alternative Reason That Defendants Have Already Produced All Requested Documents And Information In Their Possession; The Court Cannot Compel Production Of Documents In The Possession of Third Parties Or That Do Not Exist.***

The Court's October 28, 2025 order denying Plaintiffs' motion to compel (Doc. 104) set forth what was, in effect, an independent, alternative basis for the denial, which Plaintiffs' motion for reconsideration ignores. As the Court explained in its October 28 order denying the motion, with one exception, the documents sought by the motion are in the possession of a third party, Hilton Worldwide. The Court cannot order Ashford TRS to produce documents it does not have. Plaintiffs ignored this reality, and, in fact, tried to get around it by moving to compel not only

Ashford TRS *but* Hilton Worldwide as well. *See* (Doc. 104). But the Court does not have jurisdiction to compel a corporation that is not presently a party to the case absent the requirements under Rule 45 for a third-party subpoena having been met, for which there is no showing here. Plaintiffs point to the fact that they have filed a motion to amend the complaint in which they seek to add Hilton Worldwide as a defendant. That motion is pending before the presiding judge, however, and, as of the entry of this order, has not been granted. Plaintiffs are forewarned that any further attempts to obtain documents that Plaintiffs have been told are in the possession of Hilton Worldwide through a Rule 34 request for production addressed to either Ashford TRS or a current non-party will be subject to sanctions under Federal Rule of Civil Procedure 11.[15]

The only additional discovery Plaintiffs' motion to compel (Doc. 104) sought consisted of missing pages from the time log reports that had previously been produced by Ashford TRS in discovery. Regarding those pages, the Court's October 28 order urged Ashford TRS to provide Plaintiffs with those pages "as a matter of professional courtesy" or else "explain to Plaintiffs … why the pages in question are not 'missing' or else cannot be produced." (Doc. 105 at 4). It appears that, since the Court's October 28 order was entered, Ashford TRS has adequately responded to the "missing pages" discovery request. On October 23, 2025, Dwayne emailed Defendant's counsel asking for the missing pages. *See* (Doc. 107 at 14). Defendant's counsel responded the same day, stating that she believed Defendant only produced the pages from its time log report for November 26, 2022, that "reflect individuals with whom you interacted. Other employees, such as housekeepers or kitchen workers, would not be relevant to your case and would be overly broad

---

[15] *See* FED. R. CIV. P. 11(b)(1), (2) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: … it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law").

and not proportional to the needs of the case." (*Id.* at 13). The Samples continue to insist there are missing log pages without explaining why Defendant's response to their discovery request for missing log pages was insufficient. Accordingly, the Court finds that the Samples have not met their burden of demonstrating the existence of additional relevant discovery that has not already been produced by Defendant. *See, e.g., Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) ("when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request").

In sum, neither Plaintiffs' original motion, nor their motion for reconsideration shows any basis for amending the Scheduling Order to extend the discovery deadline. There is no manifest injustice to holding Plaintiffs to their chosen counsels' prior actions in the conduct of this litigation. And allowing Plaintiffs to escape the consequences of those actions imposes prejudice not only on Defendant but on the Court and the "just, speedy, and inexpensive determination" of this action. Alternatively, Plaintiffs have failed to demonstrate that there is relevant, discoverable information not already produced that they are seeking from Defendant. For all of these reasons, **Doc. 107** is **DENIED.**

**Doc. 108:**     **"Plaintiffs' Motion For Relief From Missed Deadlines Due To Counsel's Withdrawal And Disability"**

The next motion before the Court is Plaintiffs' Motion For Relief From Missed Deadlines Due To Counsel's Withdrawal And Disability, which seeks to extend the discovery and expert report deadlines, arguing excusable neglect and good cause based on prior counsel's neglect of the case and Plaintiffs' disability. *See* (Doc. 108). The Court has already ruled that Plaintiffs' prior counsels' neglect of the case does not constitute good cause for extending any deadlines. The Court will not re-visit that issue through Plaintiffs' filing of a duplicative motion, other than to say that Plaintiffs' conclusory assertion in the current motion that Defendant would not be prejudiced by

25

an extension is simply not true given the extensive delays that have occurred in the case already (as discussed in the procedural history section of this order), and in any event ignores that further extensions would prejudice the judicial goal of a "just, speedy, and inexpensive resolution," FED. R. CIV. P. 1, of this dispute.[16]

The only new matters raised in the present motion have to do with Dwayne's asserted disability.[17] The motion argues that "Plaintiff suffers from both physical walking disabilities and mental cognitive disabilities, which have made it more difficult to manage the complex procedural aspects of this litigation, particularly after the unexpected withdrawal of counsel." (Doc. 108 at 1). But the deadlines that the motion seeks to extend expired prior to the point in this litigation when Plaintiffs began representing themselves. As a result, Dwayne's disability could not have been a causal factor in the missed deadlines by Plaintiffs' prior counsel.

Accordingly, **Doc. 108** is **DENIED**.

**Doc. 111:**      **"Plaintiffs' Motion For Reasonable Accommodations And Extension Of Time Due To Traumatic Brain Injury (TBI)"**

The next motion filed by Plaintiffs seeks reasonable accommodations and an extension of time due to Dwayne's disability of "a medically documented Traumatic Brain Injury (TBI)." (Doc. 111 at 1). The Court has already addressed the arguments in this motion for extending expired deadlines based on Plaintiffs' prior counsels' neglect and based on Dwayne's disability. The

---

[16] Plaintiffs also ignore that Defendant has already filed a dispositive summary judgment motion, and that, at the time the present motion was filed, a trial date had been set in the matter. Although the trial date has since been vacated to allow the parties to participate in a settlement conference, that does not change the fact that the case has been pending since October 2023. Accordingly, if the case does not settle, a new trial date is likely to be set in the near future.

[17] The motion does not identify which of the two Plaintiffs the motion is referring to in the disability discussion, but the attached exhibit relates to Dwayne. *See* (Doc. 108 at 20). The Court notes that, as a pro se litigant, Dwayne can only represent himself. *See Lewis v. Didlake, Inc.*, No. CV DKC 25-1015, 2026 WL 233980, at *2 n. (D. Md. Jan. 29, 2026) ("While non-attorneys may represent themselves pro se in federal court, a person ordinarily may not appear pro se in the cause of another person." (internal quotation marks and citations omitted)). Since Angela must represent herself on her claims against Defendant, Dwayne's disabilities do not justify relief on Angela's behalf.

expiration of deadlines occurred around the same time that Plaintiffs' counsel announced their intent to withdraw, and Plaintiffs have not made any argument for why Dwayne's disability should excuse the neglect of his former counsels' handling of the litigation prior to when deadlines expired and counsel withdrew.[18]  Therefore, the cited disability does not justify extending any deadlines.

In addition to seeking relief from prior counsels' pasts neglect, the present motion also requests accommodations in the litigation going forward, citing to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The accommodations sought are described as "reasonable leeway regarding filing formats, comprehension issues, and technical procedural matters directly affected by Plaintiff's cognitive limitations," as well as "access to clerk's office guidance or other reasonable support in understanding and organizing filings." (Doc. 111 at 2). The Court notes that, in a recent order denying the Samples' Rule 72(a) Objection (Doc. 176), the presiding judge stated that, "[e]ven assuming Plaintiff Dwayne Sample is a qualified individual with a disability, Section 12132, by its own terms, does not apply to federal courts." (Doc. 197 at 8). The presiding judge also noted that, "even if Title II provided the appropriate mechanism for Plaintiffs to seek accommodations in this litigation, 'reasonable accommodation' does not require 'any and all means' or exempt litigants from complying with the Federal Rules of Civil Procedure." (*Id.* at 9). In fact, the presiding judge pointed out that a decision of the First Circuit, which had been cited by the Samples in their Objections, actually *affirmed* the district court's decision to *deny* an

---

[18] Neither this motion nor the previous motion (Doc. 108) made any attempt to draw any connection between Dwayne's disability and his counsels' prior neglect. Even though the Court "liberally construe[s]" Dwayne's arguments, the Court "will not act as his advocate" to make arguments for him. *Rich v. Stephens Cnty.*, No. 24-6016, 2024 WL 4556391, *2 (10th Cir. Oct. 3, 2024) (internal quotation marks and citations omitted). The argument that is missing in this motion for how Dwayne's disability supposedly is connected to his prior counsels' neglect is made in a later filed motion (Doc. 119), albeit in a truncated and conclusory fashion. The Court will address the argument in the context of ruling on that later filed motion.

untimely motion to amend despite the plaintiff in that case alleging violations of the ADA. *See Badillo Santiago v. Naveira-Merly*, 378 F.3d 1, 7-8 (1st Cir. 2004).

This is not to say that the Court would under no circumstances ever exercise its discretion to overlook certain procedural irregularities in the Samples' pro se filings, or grant them additional time for matters going forward if requested. In this regard, the Court acknowledges the letter from Dwayne's treating healthcare provider attached as an exhibit to the motion (which is also discussed later in this opinion in the context of another motion filed by Plaintiffs). But Plaintiffs' request for relief in this particular motion, which is based on the recommendations in the letter, is vague and untethered to any specific matter, such that the Court is unable to address the matter at this time. *See, e.g., Rudolph v. Harrison Metro. Hous. Auth.*, No. 2:25-CV-757, 2026 WL 1492598, at *4 (S.D. Ohio May 28, 2026) (court holds it was premature to consider letters pro se plaintiff submitted "that purportedly address[ed] her health, ability, and recommend[ed] accommodations," and denies "request for Court acknowledgement of her disability status" for lack of citation to supporting legal authority).[19] Furthermore, as Judge Davenport stressed, even where applicable, Title II does not require that "any and all means" be deployed "to make judicial services accessible. … It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided." (Doc. 197 at 9 (quoting *Tennessee v. Lane*, 541 U.S. 509, 511

---

[19] A plaintiff must demonstrate standing for *each* form of relief that he seeks, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), by showing that, without the requested relief, he will suffer "a concrete and particularized injury" that is "actual or imminent, not speculative," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Among other things, the doctrine of standing and the related concept of "ripeness" caution courts against "entangling themselves in abstract disagreements" that are not presently "fit" for judicial decision. *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 86 (D.D.C. 2025) (internal quotation marks and citations omitted). Plaintiffs' request for accommodation in this motion is unripe at this time. The argument for accommodations uses undefined terminology such as "leeway," and is connected to unspecified matters that are referred to generically as "filing formats, comprehension issues, and technical procedural matters." And Plaintiffs seek "access to clerk's office guidance or other reasonable support in understanding and organizing filings," without describing any specific guidance or support Dwayne has sought due to his disability but been denied.

(2004)). Plaintiffs have not shown that, without a court order granting the requested relief, they will be excluded from or denied the benefit of the courts based on Dwayne's disability. *See Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989) ("[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." (internal citation omitted)). As the present motion does not seek any relief regarding any specific matter for which Plaintiffs need additional time, flexibility in filing, or procedural modifications, the Court need not address the issue of whether Dwayne would be entitled to such relief down the road. The issue will be addressed if and when it is actually before the Court.

For the foregoing reasons, **Doc. 111** is **DENIED**.

**Doc. 119:    "Plaintiffs' Motion To Reopen Discovery Based On Newly Discovered Evidence And Prior Counsel's Abandonment"**

In the next motion before the Court, the Samples once again seek to reopen discovery, offering two reasons why the Court should do so: (1) newly disclosed material evidence; and (2) remedying prejudice caused by Plaintiffs' former counsel's abandonment and failure to comply with discovery deadlines. (Doc. 119 at 1).[20]

---

[20] Plaintiffs also assert in several motions, including the present one, that they did not receive the entire case file from their former counsel until October 27, 2025. This date is around the time that the order permitted counsel to withdraw from the case was entered. The Court does not understand what Plaintiffs' argument is concerning asserted prejudice related to when they received the case file. Counsel announced their intent to withdraw to the Court on September 16, 2025, after the discovery deadline had already expired. *See* (Doc. 53); *see also* (Doc. 111 at 11 (email from counsel's office to Plaintiffs dated September 16, 2025, asking whether they consented to Attorney Bojazi's withdrawal)). It appears from emails in the record that the circumstances giving rise to the need to withdraw first occurred around September 11, 2025. (Doc. 77 at 21; Doc. 127 at 11, 14-15). Plaintiffs first became aware of counsel's intent to withdraw on or about the same date. *See* (Doc. 127 at 1). Although the Court was not aware of what was going on until about a week later, it is clear from the emails in the record that the conflict did not arise until *after* the discovery deadline had expired. Thus, Plaintiffs would not have been able to avoid the expiration of the discovery deadline from their attorneys' previous inaction even if they had received the case file from their attorneys on the same day that the conflict first appeared. While Plaintiffs did suffer prejudice from their counsels' past neglect in the case, the past neglect consisted of not simply one missed deadline occurring just prior to when the conflict arose and counsel sought to withdraw, but an ongoing pattern over a course of almost two years. And the Court has already discussed the reasons why Plaintiffs are bound in this proceeding by the inactions of their chosen representatives, such that the prejudice they suffered from their attorneys' neglect is not redressable through relief accorded in the present lawsuit. Furthermore, any prejudice they suffered from their attorneys' neglect was not amplified in any manner during the

29

### 1.    *Arguments Based On Prior Counsels' "Abandonment" and Dwayne's Disability*

The Court has already addressed the Samples' arguments for reopening discovery based on prior counsels' "abandonment," and will not repeat them here. The Court does note that the current motion misrepresents the record when it asserts that, as a result of Plaintiffs' counsels' abandonment, discovery closed "*prematurely*" (*Id.* (emphasis added)). There was nothing premature about the close of discovery one month shy of two years after the case was filed, on a date that had been set in a written scheduling order entered on the docket seven months earlier.

The present motion also attempts to tie Dwayne's disability to his prior counsel's neglect, stating that, "due to his TBI and resulting cognitive limitations, [Dwayne] was unaware that deadlines were being missed and could not have acted to correct counsel's neglect." (*Id.* at 2). The motion does not cite to any disability of Angela Sample that would have affected her ability to "correct counsel's neglect." Nor does it provide any information as to how Dwayne's TBI affected his ability to monitor prior counsel's activities in the case. The Court acknowledges that the motion attaches a letter written by Dwayne's treating psychologist as "verification" of Dwayne's TMI. But the letter only vaguely explains the "reasonable accommodations to support Mr. Sample' full participation in" these proceedings, referring to "[a]dditional time to file motions, respond to motions and complete discovery"; "[a]ssistance with reading, organizing, or formatting court documents as needed"; and "[f]lexibility in procedural deadlines or rules when cognitive limitations affect comprehension or communication." (Doc. 119 at 32). The described tasks have to do with Dwayne's participation in these proceedings as a pro se litigant. There is nothing in the

---

time period between when the conflict with their attorneys first arose and when the attorneys were granted leave by the Court to withdraw (and provided Plaintiffs with their case file a few days later). The Court also notes that it protected Plaintiffs from any prejudice arising solely out of the timing of their counsel's withdrawal by preserving Plaintiffs' right to conduct the depositions of the three Hotel employees, which their prior counsel had scheduled before they sought to withdraw.

record that would call into question Dwayne's ability to monitor retained counsel, who was responsible for the tasks cited in the letter in the time-period at issue. Clients are generally reliant on their attorneys to act in a timely manner. Since he began representing himself in these proceedings Dwayne has done a more than sufficient job keeping up with procedural and other matters, having filed over 80 documents in his pro se capacity. There simply is no basis in the record for the Court to treat Dwayne's asserted lack of "knowledge that counsel was failing to comply with discovery deadlines" (*id.* at 3) differently than any non-disabled client's similar lack of knowledge. And, to the extent that Dwayne's TMI might have made it more difficult for him to "monitor" his counsel, the Court does not find that difficulty constitutes a reason to not hold him to his counsels' neglect, as it does not rise to the level of a "denial of access" to judicial proceedings (even if the ADA were applicable here, which, as was discussed in the presiding judge's order on Plaintiffs' Objections, it is not).

### 2.    *Arguments Concerning Allegedly Newly Discovered Evidence*

The only newly raised ground for re-opening discovery mentioned in this motion is supposedly "new evidence" that was produced to Plaintiffs on November 4, 2025. The "new" evidence appears to be a single "time log report" for November 26, 2022 showing that Peter Messerer clocked in for work that day at 8:15 a.m. and clocked out at 4:25 pm. (Doc. 119 at 11 (ASHFORD_00045_(Sample)).[21] Plaintiffs attempt to explain the supposed significance of this

---

[21] The motion asserts that Defendant violated its disclosure duties by supplementing its initial disclosure on November 4, 2025 with the "new evidence" to which the Motion cites. Although Defendant produced eight additional pages on November 4, 2025, Plaintiffs have not shown that the newly produced materials should have been produced pursuant to Rule 26(a)(1), which requires only that the disclosing party produce documents it intends to use "to support its claims or defenses" FED. R. CIV. P. 26(a)(1)(A)(ii); *see* (Doc. 183 at 3 ("Ashford produced all documents it intends to use at trial with its initial disclosures.")). While Defendant apparently disclosed the "event log" for the relevant date as part of its Initial Disclosures, it omitted some pages from that log, which it did not believe were relevant. Dwayne emailed defense counsel about the missing pages, and asked that they be provided as part of Defendant's Initial Disclosures, to which Defendant apparently agreed. *See* (Doc. 119 at 19-20). The Court does not find any breach of

"new" information having to do with Mr. Messerer acting "while off-duty," which somehow indicates "personal misconduct and retaliation during 911 audio" and "undermin[es]" Defendant's credibility. (*Id.* at 2). But Plaintiffs' arguments for why this evidence supports their claims do not provide any basis for further discovery. Instead, the motion merely asserts in a conclusory fashion that "[t]his evidence would have been the subject of further depositions and request for production had it been timely disclosed." (*Id.* at 3). The motion identifies the further discovery Plaintiffs seek, but does not explain why the identified discovery would be necessary or meaningful. Moreover, the additional discovery is not tied to the missing time log page concerning when Peter Messerer was on duty. As shown below, it is discovery Plaintiffs have been seeking since they first began representing themselves, which the Court discussed in ruling on previous motions.

First, the motion seeks discovery in the form of depositions of Peter Messerer, John Rickey, and Clarence Achey. (*Id.* at 4). The Court already has granted Plaintiffs permission to depose Peter Messerer and John Rickey. And Plaintiffs have not explained why the additional deposition of Clarence Achey is necessary. Nor have they tied that deposition to the newly produced time logs for Peter Messerer.[22]

Second, the motion asks for discovery of "related communications or records," "surveillance or security footage from the Hotel," and "key card/badge access reports." (*Id.* at 7).

---

Defendant's disclosure duties in the manner or timing in which the missing pages were ultimately provided.

[22] The motion asserts that "[n]ew evidence shows name of witness (Clarence Achey)," (Doc. 119 at 2), citing to Exhibit 10. Exhibit 10 is the time log report on the day in question for Clarence Achey. (*Id.* at 48-49). Plaintiffs are cautioned to avoid making misleading statements that might be read to suggest that they never heard of Clarence Achey until this "new" evidence was produced. In fact, Plaintiffs have always known that Mr. Achey was on duty and a potential witness, as they were present when Mr. Achey intervened on their behalf to get the front desk staff to return Honey to them. Mr. Achey also may have been identified as a potential witness in Defendant's Initial Disclosures. *See* (*id.* at 57). And the Bates number on Mr. Achey's time log report (ASHFORD_00014_(Sample)) indicates that the page in question was included in Defendant's initial document production, rather than in Defendant's late production in November 2025. *See* (*id.* at 19 (indicating that the newly produced documents consisted of Bates numbered pages ASHFORD_00040-00048)).

The request for this additional discovery is denied for all the reasons previously given, plus the independent alternative reason that Plaintiffs have not shown the relevancy of this additional discovery or a connection between this discovery and any "newly" discovered evidence. Another independent alternative reason for denying the requested discovery is that the Court credits the representation of Defendant's counsel that "[t]here is no such information that hasn't been provided." (*Id.* at 57). The Samples have given the Court no reason to believe that, contrary to Defendant's representation, the additional requested discovery exists. Now that the Court has found that there are no additional documents or records in existence that the Hotel could produce, the Court forewarns Plaintiffs (as Defendant has already done, *see* (*id.*)) that any additional motions seeking such non-existent discovery or documents will be deemed frivolous, and sanctions may be imposed accordingly, which could include a recommendation to impose filing restrictions and/or that their claims be dismissed for abusive litigation practices.[23]

For all of the foregoing reasons, **Doc. 119** is **DENIED**.

**Doc. 127:**    **Plaintiffs' Motion For Judicial Review and Relief Due To Counsel Withdrawal, Disability, Tainted Discovery, and Opposing Counsel Misconduct**

This next motion, like the ones before it, repeats all the asserted bases for re-opening discovery and other complaints about these proceedings raised by the Samples in their previous filings, and then adds to those.

---

[23] *See, e.g., Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) ("There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances. … '[E]ven onerous conditions may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved.'" (citations omitted)).

### 1.    *Attorney Neglect Arguments*

Plaintiffs' arguments for re-opening discovery based on attorney neglect—including miscited case law to support those arguments[24]—are the same ones the Court has already rejected in ruling on the earlier filed motions. Plaintiffs add an argument about Attorney Bojazi being out of the country, but misrepresents that she was out of the country "during the discovery period." (Doc. 127 at 2). Attorney Bojazi appears to have been out of the country for the approximately two-week period of October 6-21, 2025. *See* (Doc. 111 at 12-13; Doc. 127 at 84). The discovery deadline had already expired a month earlier, on September 5, 2025. Her extended absence was not during the discovery period, and the Court does not see how it could have added to the prejudice Plaintiffs suffered from any previous neglect that may have occurred.

### 2.    *"New" Evidence and "Late Disclosures" Arguments*

Plaintiffs also refer to Defendant's November 2025 production of Peter Messerer's time log, but instead of making a "newly discovered" evidence argument as before, they argue that Defendant failed to supplement its disclosures in a timely fashion, and that its "late disclosures and procedural obstruction justify sanctions and reopening of discovery under the Court's inherent authority." (Doc. 127 at 2). The attached exhibits do not show that Defendant withheld any requested discovery, failed to timely supplement any required disclosure, or obstructed these proceedings in any manner. Instead, they show that Defendant responded fairly and appropriately to Plaintiffs' inquiries in October and November 2025 about missing pages from previously produced records. The motion states that the Samples "previously requested … missing disclosures … but received no response *before discovery closed*" (Doc. 127 at 1 (emphasis added)), suggesting that Plaintiffs' request for missing pages was made before discovery had closed, when

---

[24] The Court intends to address the issue of miscited case law by Plaintiffs in a separate order.

that is not the case. The cited exhibit for the request shows that Plaintiff emailed opposing counsel on October 23, 2025 (*id.* at 59), again, well after discovery had closed. What's more, defense counsel responded to the emailed inquiry *eight minutes* after it was sent, providing an explanation for why the missing pages had not been produced. (*Id.*). Then, only twelve days later on November 4, 2025, Defendant responded to additional emails from Dwayne about the same missing pages, providing a further explanation for why they had not been produced (*id.* at 67), and then emailed Plaintiffs the missing pages reflecting Peter Messerer's time entries (Doc. 119 at 19; Doc. 127 at 52) after Dwayne insisted the additional production was required as part of Defendant's initial disclosure obligations (Doc. 127 at 63). The Court finds no late disclosure actually occurred, and no grounds for sanctions or re-opening of discovery has been shown.

### 3.    *Disability and Reasonable Accommodation Arguments*

The motion does not cover any new ground in terms of Plaintiff's disability-related arguments are concerned, except insofar as it cites to a comment made by defense counsel in one of the email exchanges she had with Dwayne concerning the missing pages Plaintiffs were seeking from Defendant's already produced time logs. The comment included a reference by defense counsel to Dwayne's disability in which counsel asserted that the disability did not justify permitting any additional discovery in the case. Plaintiffs assert that opposing counsel's statement was discriminatory and revealed a bias towards Dwayne's disability and veteran status. (*Id.* at 3). The statement was merely that Defendant had a right to defend itself regardless of Dwayne's status or disabilities, which is true and not discriminatory. Moreover, even if defense counsel had shown prejudice against Dwayne because of his disability (which she did not), Plaintiffs' argument does not show discrimination or bias by this Court in its rulings or how these proceedings have been

conducted. For these reasons, the motion's request for sanctions or relief from discovery deadlines based on counsel's statement (*id.*) is denied.

### 4.      *New Request for Judicial Review of Opposing Counsel's "Conflict of Interest"*

The motion raises a new argument about defense counsel having a conflict of interest in her dual representation of Ashford TRS and non-party Hilton Worldwide Holdings, Inc. (Doc. 127 at 3). Plaintiffs cite to attached Exhibits 8 and 9, labeled respectively "Conflict of Interest Notice" and "Bar Complaint." Exhibit 8 is actually a motion in itself, requesting judicial relief related to the supposed conflict of interest. Exhibit 8 has not been filed as a motion and therefore does not presently require any ruling by the Court. No further discussion of the issues raised in Exhibits 8 and 9 is called for at this time. The Court cautions Plaintiffs against making legal or factual arguments in a separate document labeled an exhibit. All arguments, whether concerning legal or factual matters, must be included in the motion itself, or legal brief in support of or opposed to a motion. The Court also cautions Plaintiffs against re-filing either of the exhibits in question as a separate motion or brief in support of a separate motion, because they do not include any legal citations supporting a good faith belief, formed after reasonable inquiry, that the arguments made therein "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see* D.N.M. LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced.").[25]

---

[25] Although the issue is not currently before the Court, there does not appear to be anything improper about counsel representing both Ashford TRS and Hilton Worldwide. In addition, the Court finds Plaintiffs' complaints about defense counsel in one of their earliest filed motions (which are described in the procedural history section of this opinion) to be without merit. Defense counsel was not required to file a motion to substitute when they changed or added attorneys from the same law firm. *See* D.N.M.LR-Civ. 83.4, 83.8. Nor was counsel required to file a motion when she changed her affiliation to a different law firm. Moreover, these events, which Plaintiffs complained about, did not affect Plaintiffs or prejudice them or these proceedings.

### 5.    *Argument that Local Rule 7.1 is Inapplicable*

The current motion argues that motions for judicial relief and those seeking ex parte or equitable relief are exempt from the conferral requirement of D.N.M.LR-Civ. 7.1(a). Plaintiffs also argue that the Court should exercise flexibility with regard to this requirement due to Plaintiffs' disabled and pro se status. (Doc. 127 at 3). This argument appears to be unrelated to the purposes of the motion or any specific relief requested by the motion, and is neither properly raised nor developed for the Court's consideration. It appears that the issue may have been raised in this motion as a response to an argument that Defendant raises in a motion to strike, which it filed a week later. *See* (Doc. 162). The Court does not find that the Rule 7.1(a) issue was properly raised in Defendant's motion to strike, and instead will address it in a separate order dealing with the parties' dispute over the depositions of the three Hotel employees.

### 6.    *Argument that Opposing Counsel Refuses to Confer on Written Depositions*

Without going into any detail, the current motion argues that defense counsel's "refusal to confer on written depositions" contravenes various rules, and also asserts that "[w]ritten depositions do not require stenographic recording absent agreement or court order." (Doc. 127 at 2-3). Once again, this argument appears to be unrelated to the purposes of the present motion or any specific relief requested by the motion, and is neither properly raised nor developed for the Court's consideration. It again appears to be an argument made in anticipation of Defendant's filing one week later of a motion for protective order from Plaintiffs' attempt to depose the Hotel employees under Rule 31 rather than Rule 30 of the Federal Rules of Civil Procedure. *See* (Docs. 154, 155). As noted, the Court intends to address the issue raised by the motions seeking relief regarding the three Hotel employees' depositions in a separate order.

For the foregoing reasons, **Doc. 127** is **DENIED**.

37

**Doc. 143:**       **Plaintiffs' "Motion To Amend Pending Reconsideration Motion To Compel Discovery Due To New Evidence and Opposing Counsel's Refusal To Comply"**

This motion makes arguments about Defendant's supposed failure to comply with its ongoing duty to supplement previous disclosures or discovery materials notwithstanding the close of discovery. The motion refers to discovery that Plaintiffs are still seeking as "newly discovered" evidence, when in fact, as previously discussed, Defendant has already responded to Plaintiffs' request for this information by not only declining to engage in further discovery after the deadline for discovery has expired, but by *also* informing Plaintiffs that it has no further documents in its possession that would be responsive to the newly requested information sought by Plaintiffs.[26] Specifically, Plaintiffs have been informed that Ashford TRS cannot produce the Hilton corporate investigation/incident report because it does not have a copy of that report to produce.[27] Further, as discussed *supra,* Ashford TRS has represented that all internal and investigative reports regarding the incident which were prepared by any of its agents or employees have already been produced. The same is true of any relevant documents related to Chief Engineer Clarence Achey, badge access/keycard reports or security reports, and payroll, HR, or pay sheet records for Peter Messerer. If any such relevant documents exist, they have already been produced. This motion does not go over any new grounds that is not already covered by previous motions filed by the Samples.[28] For the same reasons that those previous motions were denied, **Doc. 143** is also **DENIED**.

---

[26] *See, e.g.,* (Doc. 162 at 3) ("When Plaintiffs brought it to Ashford's attention that some pages were missing from one of the documents, it produced the missing pages in a supplemental disclosure.")).

[27] (Doc. 183 at 3) ("Plaintiffs' motions filed since they have become pro se seek documents that have nothing to do with Ashford, i.e. Dwayne Sample's correspondence with Hilton's customer service team, a separate corporation, and that team's internal documents related to Mr. Sample's complaint.")).

[28] A substantial portion of Plaintiffs' argument for the motion is not found in the motion itself, but instead is set forth in exhibits to the motion that are labeled "Notice And Request For Supplemental Disclosures And Investigation

**Doc. 145:**   **"Plaintiffs' Motion For Reconsideration of Motion For Protective Order and Sanctions Due To Deposition Abuse, Discovery Misconduct, and Pattern of Counsel Harassment"**

This motion seeks reconsideration of the Court's October 27, 2025 text order denying a motion filed by Plaintiffs on October 23, 2025, which sought relief concerning their August 18, 2025 depositions. *See* (Doc. 90 ("Plaintiffs' Motion To Strike Deposition Testimony and For A Protective Order")). The Court's text order denied the motion as untimely, citing the controlling scheduling order, which provided that motions related to discovery were due by September 26, 2025. *See* (Doc. 102). In addition, the Court denied Plaintiff's motion for failure to comply with D.N.M. LR-Civ. 7.1(a). The current motion for reconsideration states that Plaintiffs have now complied with the conferral requirement of Local Rule 7.1(a), and that Plaintiffs have "newly discovered evidence supporting reconsideration." (Doc. 145 at 1). Because the Court denied Plaintiff's previous motion (Doc. 90) by text order, and relied in part on Plaintiffs' failure to comply with the conferral requirement of Local Rule 7.1(a), the Court will grant the motion to the extent that it seeks reconsideration.[29] However, upon reconsideration, the Court reaffirms its denial of Doc. 90, or any additional relief requested in the motion for reconsideration related to Plaintiffs' prior depositions, for the multiple, independent reasons set forth below.

---

Records" (Doc. 143 at 8-11), and "Second Notice And Request For Supplemental Disclosures And Security Access Records" (*id.* at 13-16). These "Notices" are improper and subject to being stricken for the reasons mentioned previously in this opinion, and further expanded upon in a separate order the Court will be entering on Defendant's motion to strike (Doc. 162).

[29] To be clear, the Court does *not* find that reconsideration is warranted by "new evidence" demonstrating a "pattern of misconduct," and in fact expressly rejects that argument put forth by Plaintiffs as a reason why the Court should reconsider its previous text order. The supposed "new" evidence consists of statements by defense counsel in several emails referring to Dwayne's disability, seeking clarification regarding something Plaintiffs said that involved a misspelled word, and correcting Plaintiffs for referring to themselves in written documents as "counsel." (Doc. 145 at 203). The Court finds that none of the statements cited by Plaintiffs are harassing, discriminatory, misleading, hostile, or in any other way inappropriate. Nor do any of the cited statements constitute "new evidence" that would justify reconsideration of the Court's prior text order.

As an initial matter, Plaintiffs' motion for reconsideration does not address the timing issue in the Court's text order denying the original motion. Plaintiffs' depositions took place on August 18, 2025. Motions related to discovery were due by September 26, 2025. Plaintiffs' original motion was filed on October 23, 2025, after the discovery motions deadline had expired. As discussed previously in this opinion and order related to Plaintiffs' request to amend the scheduling order to extend the deadline for discovery, Plaintiffs have not set forth any facts to establish good cause or excusable neglect to amend the scheduling order deadline for motions related to discovery. Because the motion was untimely, the Court need not address Plaintiffs' arguments for relief related to their depositions.

Alternatively and as an independent reason for denying Plaintiffs relief related to their depositions, the Court rejects Plaintiffs' arguments on the merits. First, Plaintiffs were represented by counsel during their depositions, and the excerpts from the deposition transcripts attached to the motion for reconsideration reveal that Plaintiffs' counsel did not object to questioning. *See* Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."). Moreover, although the motion characterizes defense counsel's questions as "highly intrusive," "harassing," "hostile," argumentative," and "attempt[ing] to intimidate," the Court has reviewed the deposition transcript excerpts submitted with the motion and finds that Plaintiffs' characterizations of the questioning are inaccurate. Furthermore, none of the questions appear to be improper, including questions concerning Plaintiffs' medical conditions and/or medications that they take, which matters are relevant to the issues in the case, not privileged (or else any privilege Plaintiffs might have had was waived by

40

filing this lawsuit), and therefore discoverable. And a HIPAA release form would only be required if Defendant sought medical information about Plaintiffs from a third party, as opposed to asking them directly during their depositions. As a result, Plaintiffs have not shown any basis for their requests for sanctions or any other form of relief sought by the original motion and motion for reconsideration.

Plaintiffs also have not shown any basis for a protective order limiting improper questions for the additional reason that the depositions have already been conducted, so that form of relief is moot. And the request that any future depositions be court-supervised or remote with safeguards is without merit for the additional reason that the depositions are over and discovery is closed, so there will be no future depositions requiring any such relief. Finally, the request in the motion for reconsideration that the Court "compel production of missing disclosures and time logs" (Doc. 145 at 4) is denied for all the additional reasons previously given in this opinion and order concerning similar motions seeking the same relief.

For all of the above reasons, **Doc. 145** is **GRANTED** as to reconsideration, and **DENIED** on the merits.

**Doc. 151:**   **Plaintiffs' Motion to Compel Outstanding Disclosures and for Sanctions**

This motion seeks to compel Defendant to produce records that allegedly were omitted from its initial disclosures, and to require Defendant to move forward with written depositions. The written deposition issue will be addressed in a separate order. For purposes of the present motion, the Court finds that Defendant had a good faith basis for opposing written depositions and therefore it is not subject to sanctions for its opposition to proceeding with depositions. In addition, Plaintiffs' assertion that Defendant is "withholding [ ] investigation reports, maintenance logs, time records, and incident documentation" (Doc. 151 at 3) is without merit for all of the reasons

41

previously set forth in this opinion. And Plaintiffs' conclusory assertion that Defendant "failed to provide required disclosures" is unsupported by legal citation, reasoned argument, or citation to facts supported by evidence in the record.

For all of the above reasons, **Doc. 151** is **DENIED**.

**Doc. 154:**       **"Plaintiffs' Motion to Terminate Depositions, For Protective Order, and For Sanctions Pursuant to Fed. R. Civ. P. 30(d) and 30(d)(2)"**

This motion seeks to "terminate the [Samples'] August 18, 2025 depositions." (Doc. 154 at 1). The motion also seeks a protective order and to impose sanctions on Defendant for the manner in which its counsel conducted the depositions. The motion should be stricken as duplicative of Doc. 90 and Doc. 145. In addition, the depositions are in the past, meaning they are already terminated. Plaintiffs' request for a court order terminating already completed depositions is frivolous. Because the questioning has already taken place, Plaintiffs' request for a protective order prohibiting the objected-to questions is frivolous for the same reason. The Court cannot undo the past, so a protective order would be meaningless in this situation. Moreover, and in any event, the complained-of questioning—"irrelevant personal questioning"; "questions about children or non-party family"; and "medical questions without a signed HIPAA release"—appear to have been permissible under the rules. *See Landry v. Swire Oilfield Servs., L.L.C.,* 323 F.R.D. 360, 380 (D.N.M. 2018) (relevance for purposes of Fed. R. Civ. P. 26(b)(1) is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense") (internal quotation marks and citation omitted). At the very least, such questions would not have been grounds for instructing Plaintiffs not to answer, as the rules permit such an instruction only "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

> If a party believes that a particular question asked of a deponent is improper for any other reason, that party may object; however, the examination still proceeds; the testimony is taken subject to any objection. This is the case even when deposition questions appear to seek irrelevant information.
>
> > If deposing counsel engages in irrelevant or repetitious questioning, the appropriate course for opposing counsel is to enter an objection. The witness may then answer the question. If the answer is offered at trial, opposing counsel may then renew the objection and obtain a ruling from the court.

*Nguyen v. LVNV Funding, LLC,* No. 15CV758-LAB (RBB), 2017 WL 951026, at *2 (S.D. Cal. Mar. 10, 2017) (internal quotation marks and citations omitted). In other words, even if the questions were irrelevant, Plaintiffs were required to answer them in discovery (i.e., during their depositions). The proper time to raise the relevance issue would be if and when Defendant were to seek to introduce evidence concerning the allegedly irrelevant topics at trial.

In terms of relevancy in general, the Court notes that the lens through which Plaintiffs are evaluating the questions for relevancy appears to be narrowly focused on their claims only, and specifically, on the events that occurred on the day of the incident in question, without regard to evidence that Defendant may wish to pursue in defending Plaintiffs' claims. Relevant evidence, including potential witnesses, from Defendant's perspective, might be found through questions concerning Plaintiffs' medical history, family history, and work background. The Court finds that defense counsel's questioning did not call for privileged information, that the questioning sought information relevant to the instant proceedings, and that both the questions and the means in which they were asked were proper. Accordingly, there is no basis for the motion's request for sanctions.

For the foregoing reasons, **Doc. 154** is **DENIED.**

**Doc. 160:** **"Plaintiffs' Motion For Specific Sanctions of $7,500 Or More For Discovery Misconduct, Bad-faith Delays, And Violation Of Court Orders"**

Plaintiffs seek in this last motion to recover $7,500 as a "sanction" for Defendant's supposed discovery violations, "refusal to confer as required by Local Rule 7.1," and "refusal to comply with Court-ordered deposition procedures." (Doc. 160 at 1). The motion cites to three sources of legal authority for imposing sanctions.[30]

### 1.    *Rule 37(b): Failure to Obey Discovery Orders*

Sanctions under Federal Rule of Civil Procedure 37(b) are only available if a party fails to comply with a court *order* requiring discovery. *See* Fed. R. Civ. P. 37(b)(2)(A) (listing possible sanctions when "a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey *an order to provide or permit discovery*" (emphasis added)). Typically, for Rule 37(b)(2) sanctions to apply, the party seeking sanctions must have already filed and succeeded on a motion to compel.

> Generally, a "party lays the predicate for Rule 37(b) sanctions by filing a motion under Rule 37(a) seeking an order compelling disclosure or discovery." *Evans v. Griffin*, 932 F.3d 1043, 1046 (7th Cir. 2019) (internal quotations omitted). "Only if (and to the extent) the court grants that order, and then the person subject to the order fails to comply with it, may the party seeking discovery move on to Rule 37(b) and ask for sanctions." *Id.; see also Confederacion Hipica de Puerto Rico, Inc. v. Confederacion de Jinetes Puertorriquenos, Inc*., 30 F.4th 306, 318 n.6 (1st Cir. 2022) (Rule 37(b)(2) sanctions are not available "without the issuance, and subsequent violation, of a formal order under Rule 37(a)."), *cert. denied*, 143 S. Ct. 631 (2023); *see also Nozinich v. Johnson & Johnson, Inc.*, No. 09-02105-DKV, 2011 WL 13124086, at *2

---

[30] Exhibits 6-9 consist of additional albeit repetitive factual and legal arguments by Plaintiffs. *See* (Doc. 160 at 33-41). As noted previously, the Court will only consider legal and factual arguments made in the motion and/or brief in support of the motion. Therefore, Exhibits 6-9 will be disregarded. Plaintiffs are again forewarned that it is inappropriate to submit legal or factual arguments, including citations to and discussions of case law, as an "exhibit" rather than a motion or brief in support of or opposing a motion.

(W.D. Tenn. Apr. 4, 2011) ("A party seeking to impose discovery sanctions must first seek a court order compelling discovery.").

*Patton v. Sparks*, No. 23-3096-JWB-RES, 2024 WL 181826, at *5 (D. Kan. Jan. 17, 2024).[31]

Plaintiffs do not point to any order that Defendant has violated. The Court did enter an order extending the deadline for the depositions of three Hotel employees, but that order is a "'far cry from the targeted order requiring compliance with a particular discovery request contemplated by Rule 37(a).' … The [ ] order imposed a deadline by which [the three Hotel employees'] deposition[s] could occur but it in no way compelled [those] deposition[s]." *Id.* at *6 (quoting *Evans*, 932 F.3d at 1046). Plaintiffs have *sought* a court order compelling additional discovery as well as written depositions. But the Court has not entered any order on those motions. As a result, Defendant's refusal thus far to provide Plaintiffs with additional discovery or to participate in the written depositions sought by Plaintiffs cannot be sanctioned under Rule 37(b)(2)(A). Plaintiffs are forewarned that any future motions seeking Rule 37(b)(2) sanctions where there is no court order compelling the discovery in question will itself be subject to Rule 11 sanctions as frivolous.

### 2.    *Rule 30(d)(2): "Conduct That Impedes or Frustrates Depositions"*

Fed. R. Civ. P. 30(d) allows the court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Generally Rule 30(d)(2) is used in the following situations: (1) when someone other than the deponent, usually an attorney, is accused of interrupting the deposition, e.g., where counsel directed the deponent not to answer, "testified on behalf of her witness by way of suggestive

---

[31] "Unlike Rule 37(b)(2), Rule 37(d) does not require a court order as a prerequisite for sanctions." *Patton*, 2024 WL 181826, at *6. But Rule 37(d) provides for sanctions only where a party fails to appear for a properly noticed deposition, or fails to respond to properly served interrogatories or requests for production.

45

speaking objections"; or made "a substantial number of argumentative objections together with suggestive objections and directions to the deponent to refrain from answering questions without asserting a valid justification"; (2) when a party fails to appear at a properly-noticed deposition; or (3) when the deponent, by his or her own behavior, delays, or frustrates fair examination. *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-CV-00007-WJM-KLM, 2014 WL 859238, at *7 (D. Colo. Mar. 4, 2014) (citing cases) (internal quotation marks and citations omitted). Plaintiffs' complaints about defense counsel's conduct of their August 2025 depositions do not fit into any of these categories. Rather, Plaintiffs primarily object to the substance of the questions they were asked. But at no time did their counsel instruct either Plaintiff not to answer a question. This indicates that even if some of the questions were about irrelevant matters, Plaintiffs were required by the rules of procedure to answer them, as previously discussed in this opinion and order.

Furthermore, as has also been previously discussed in relation to other motions filed by Plaintiffs, they have not identified any language (such as offensive words or inappropriate tones), or behavior (such as excessive objections or speaking objections), by defense counsel that impeded, delayed, or frustrated their August 2025 depositions. *See, e.g., Farabaugh v. Isle, Inc.,* No. 1:20-CV-03644-CNS-STV, 2024 WL 216675, at *3 (D. Colo. Jan. 19, 2024). The Court finds no basis in the record for imposing a sanction for the manner in which defense counsel conducted Plaintiffs' depositions.

### 3. *Court's Inherent Authority*

There is no basis in the record for the Court to exercise its inherent authority to sanction defense counsel for any of the conduct asserted in the motion. The Court has found that defense counsel's questioning of Plaintiffs at their depositions was proper.

For all of the foregoing reasons, **Doc. 160** is **DENIED.**

**B.** **Notice To Pro Se Litigants Regarding Duplicative Motions**

"Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). "Plaintiff[s] [are] advised that the Court acts to resolve all pending cases in the most efficient manner possible. A federal district court is a trial court simultaneously addressing a volume and variety of cases of varying priorities; and a part of the Court's responsibility is to see that its resources are allocated in a way that promotes the interests of justice. Accordingly, the Court cannot issue orders and rulings purely on the best timeline for a litigant." *Fox v. Rosario*, No. 4:23-CV-00014-JMK, 2023 WL 8372823, at *3 n.26 (D. Alaska Dec. 4, 2023); *see also Domenico v. Haschak,* No. CV 09-307 MV/CEG, 2011 WL 13175481, at *1 (D.N.M. Sept. 30, 2011). Although pro se litigants are given considerable latitude, Plaintiffs' overlapping and repetitive motions have consumed more than their share of the Court's time and wasted scarce judicial resources. *See Escobar v. Foster*, No. 12-CV-00489-CMA-KLM, 2013 WL 5878409, at *12 (D. Colo. Oct. 31, 2013) ("Whether or not Plaintiff's actions are frivolous or malicious …, the Court is convinced that to continue to let Plaintiff file his redundant, verbose, resource-consuming, and often groundless accusations unchecked by a reasonable restriction would allow Plaintiff to 'consume[ ] more than his fair share of the federal judiciary's limited resources.'" (quoting *In re Peterson*, 338 F. App'x 763, 764, 2009 WL 2197345 (10th Cir. 2009)). "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

"The continual processing of" Plaintiffs' repetitive motions makes it difficult for the Court to fulfill its responsibility to see "that [its] resources are allocated in a way that promotes the

47

interests of justice." *In re McDonald*, 489 U.S. at 184. Plaintiffs are hereby on notice that the Court is "not required to expend judicial resources endlessly entertaining repetitive arguments." *Gardner v. U.S. Gov't,* No. CIV. 08-0589 MV/LAM, 2010 WL 966419, at \*1 (D.N.M. Feb. 18, 2010). "Once a motion has been filed, [Plaintiffs] [are] required to wait for a ruling. Plaintiff[s] must not file a motion if [they] ha[ve] another motion on the same subject matter already pending before the Court, and [they] must refrain from unnecessarily increasing the number of filings by requesting a ruling on an already-pending motion." *Kienitz v. Unknown Provider*, Case No. 3:25-cv-00374-ACP, 2026 WL 1435048, at \*2 (D. Alaska May 21, 2026). Plaintiffs are warned that any future filing of repetitive motions seeking the same or similar or overlapping relief concerning either a matter that the Court has already ruled on, or a matter that has already been raised in a pending motion which the Court has not yet ruled on, will be considered an abusive litigation tactic that likely will lead to, at a minimum, immediate revocation without further notice of the permission to file electronically. *See* (Doc. 96 at 2 ("The Court will revoke permission to file electronically if Plaintiffs abuse their electronic filing privilege or fail to comply with the rules and procedures in the District of New Mexico's Guide for Pro Se Litigants and the District of New Mexico's CM/ECF Administrative Procedures Manual.")).[32] Further sanctions also may be imposed or recommended.

Plaintiffs' abuse of the judicial process in this case goes beyond the filing of repetitive motions to also include misrepresentations of facts in the record (discussed in this opinion and

---

[32] Access to electronic filing by pro se parties is generally treated in federal court as a privilege that can be revoked, not a right. *See, e.g., Graham v. PNC Bank*, No. 5:26-CV-00054-AGM-PRL, 2026 WL 1284491, at \*1 (M.D. Fla. May 11, 2026) ("The general rule disallowing pro se parties to file directly using CM/ECF exists, in part, because both the history and experience of the Court demonstrate that granting pro se parties access to direct filing in CM/ECF results in an increased burden to the Clerk's Office and Court personnel. At a bare minimum, the Court and the Clerk's Office must monitor whether filings entered via CM/ECF are properly entered on the docket. Often, granting pro se parties access to direct filing in CM/ECF results in a needless increase in frivolous filings.").

order), as well as the filing of numerous improper "notices" and misciting case law (both of which will be discussed in greater detail in separate opinions by the Court). Motions for reconsideration or to supplement previously filed motions with new arguments that could have been made at the time the motion was originally filed are also rarely justified and likely will be viewed as frivolous and/or abusive. Motions for reconsideration typically "amount to little more than a disagreement with the Court's decision with a goal of getting the Court to change its mind based on the same arguments and evidence previously provided. … A motion predicated on such a tenuous legal basis is a waste of judicial resources." *Rudolph,* 2026 WL 1492598, at *3 (internal quotation marks and citation omitted). The Court will scrutinize Plaintiffs' future filings and take action to put a stop to further abusive litigation tactics, as outlined herein, should those tactics continue.

### *Conclusion*

In summary, as set forth above, **Doc. 107** is **DENIED**; **Doc. 108** is **DENIED**; **Doc. 111** is **DENIED**; **Doc. 119** is **DENIED**; **Doc. 127** is **DENIED**; **Doc. 143** is **DENIED**; **Doc. 145** is **GRANTED IN PART AND DENIED IN PART**; **Doc. 151** is **DENIED**; **Doc. 154** is **DENIED**; and **Doc. 160** is **DENIED**.

IT IS SO ORDERED this 16th day of July, 2026.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE